UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KATHLEEN GORSLINE,

    Plaintiff,

v.

SPEEDWAY LLC,

    Defendants.

_____/

Case No. 16-cv-13002

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

UNITED STATES MAGISTRATE JUDGE
ANTHONY P. PATTI

## OPINION AND ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [17]

**I. INTRODUCTION**

On July 26, 2016, Kathleen Gorsline ("Plaintiff") filed the instant tort action against Speedway LLC ("Defendant" or "Speedway"), asserting claims of premises liability and ordinary negligence. *See* Dkt. No. 1. Plaintiff asserts she sustained injuries after falling over a water display at one of Defendant's stores. Plaintiff originally filed this action in state court, and the Defendant filed a notice of removal under 28 U.S.C. §§ 1332 and 1441 on August 17, 2016. *See* Dkt. No. 1.

Presently before the Court is Defendant's Motion for Summary Judgment, filed on May 23, 2017. *See* Dkt. No. 17. Defendant seeks summary judgment on both Plaintiff's premises liability and ordinary negligence claims. *Id.* Plaintiff

1

filed a Response in Opposition to Defendant's Motion on June 6, 2017, and Defendant filed a Reply in Support on June 19, 2017. *See* Dkt. Nos. 19, 20.

For the reasons that follow, the Court DENIES IN PART and GRANTS IN PART Defendant's Motion for Summary Judgment [17].

**II.     FACTUAL BACKGROUND**

On September 3, 2015, Plaintiff entered a Speedway convenience store in Burton, Michigan and allegedly suffered harm. Dkt. No. 1-2, p. 5–6 (Pg. ID 14–15).

When Plaintiff entered through the main entrance, the checkout counter would have been visible several feet straight ahead and slightly to her right. Dkt. No. 19-3, p. 4 (Pg. ID 231). Newspapers rested on a stand directly to her right, adjacent to the checkout counter. *Id.* To Plaintiff's left were four aisles, all positioned horizontal to the main entrance. *Id.* At the far side of each aisle was a large cooler, and this cooler spanned the entire width of the far wall. *Id.*

Upon entering the store, Plaintiff picked up a newspaper and lottery slips and proceeded to checkout. Dkt. No. 17-2, p. 4 (Pg. ID 141). Because the checkout line extended far into the second aisle, Plaintiff proceeded down the first aisle to reach the back of the line. *Id.* As she walked down the first aisle, she did not stop to examine any items and did not notice any merchandise displays or advertisements. *Id.* at 5 (Pg. ID 142). The store was well-lit and nothing

obstructed Plaintiff's view of the white, tile floor. *Id.*; Dkt. No. 17-3, p. 2 (Pg. ID 153). When she reached the end of the first aisle, Plaintiff turned right at the cooler, and then right into the second aisle. Dkt. No. 17-2, p. 5 (Pg. ID 142). Plaintiff took one step down the second aisle and then "fell due to a milk crate type box on which a small box of water was placed directly past the corner of the aisle." Dkt. No. 1-2, p. 6 (Pg. ID 15); Dkt. No. 17-2, p. 6 (Pg. ID 143). Plaintiff testified that prior to her fall she did not see the water display. Dkt. No. 17-2, p. 10 (Pg. ID 147). She acknowledged, however, that after her fall the water display was "pretty obvious" to see. *Id.* at 7 (Pg. ID 144).

The display was a case of 16.9 ounce bottled water with clear and blue packaging which rested on a blue storage crate.[1] Dkt. No. 17-2, pp. 6–7 (Pg. ID 143–44); Dkt. No. 19-4, p. 5 (Pg. ID 236). It stood roughly one foot high. Dkt. No. 17-2, p. 7 (Pg. ID 144); *see also* Dkt. No. 17-5, p. 4 (Pg. ID 159).

It was situated at the inside corner of the second aisle, at the end of this aisle. Dkt. No. 19-2, p. 2 (Pg. ID 227). Defendant designated this area for promotional products and, in its operations manual, referred to the area as Power Wing 5 ("PW5"). Dkt. No. 17-5, p. 5 (Pg. ID 160). According to Speedway employee

---

[1] Plaintiff did not recall the water display's exact color, stating "I think it was black. I'm not—I can't swear to it, but I'm saying black." Dkt. No. 17-2, p. 7 (Pg. ID 144). When shown a photograph of a water display, however, Plaintiff found it to be similar to that on which she tripped. *Id.* at 9 (Pg. ID 146). This photograph depicts a blue water display, and therefore, the Court considers the water display at issue to be blue in color.

Daniel Ford, the Defendant placed the water display at PW5 with the intention that customers might notice and purchase the water. Dkt. No. 17-6, p. 5 (Pg. ID 165). Ford testified that power wings are common at supermarkets and gas stations, and are frequently referred to as "endcap" displays. *Id.* The general manager of Defendant's store at the time of the incident, Kirsten Cranick, testified that prior to Plaintiff's fall the water display had been at PW5 for at least several days and perhaps as long as one month. Dkt. No. 17-5, p. 3 (Pg. ID 158).

Defendant's surveillance cameras generally covered the area where Plaintiff fell, but none captured Plaintiff's fall. Dkt. No. 17-5, p. 3 (Pg. ID 158). Surveillance cameras did capture Plaintiff walking down the first aisle carrying a newspaper with both hands. Dkt. No. 17-2, p. 11–12 (Pg. ID 148–49). Plaintiff denies that the newspaper impacted her ability to see the water display. *Id.*

Both Plaintiff and Defendant agree that Defendant's Exhibit B accurately represents the situation as it existed on the date of the incident. *See* Dkt. No. 17-3.

Finally, Plaintiff alleges that as a result of her fall she sustained severe injuries, including "a three-part surgical neck fracture of the left proximal humerus, shoulder limitation of movement and strength, [sic] neck and back pain radiating into her arms and legs with numbness." Dkt. No. 19, p. 10 (Pg. ID 212).

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). To demonstrate the existence of a genuine issue of material fact, the nonmoving party must present sufficient evidence upon which a jury could reasonably find for that party; a "scintilla of evidence" is insufficient. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 243, 252 (1986); *see also Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). A court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See Anderson*, 477 U.S. at 255. The essential inquiry is "whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

## III. ARGUMENT

Plaintiff asserts two claims, one for premises liability and one for ordinary negligence. On the premises liability claim, the Court concludes there is a genuine dispute of material fact regarding whether the water display was an open and obvious hazard. Therefore, the Court DENIES Defendant's Motion for Summary Judgment on this claim.

Second, the Court finds there is no genuine dispute of material fact regarding Plaintiff's negligence claim. Accordingly, the Court GRANTS Defendant's Motion for Summary Judgment on Plaintiff's negligence claim.

5

Each claim is discussed in turn.

**A. Premises Liability**

In Michigan, "[p]remises liability is a specific type of negligence claim based on an injury that arises out of a condition on the property as opposed to an injury arising out of the activity or conduct that created the condition." *DeBusscher v. Sam's E., Inc.*, 505 F.3d 475, 479 (6th Cir. 2007) (citing *James v. Alberts*, 464 Mich. 12, 626 N.W.2d 158, 162 (Mich. 2001)). In a premises liability action under Michigan law, a plaintiff must prove the four elements of negligence: "(1) 'the defendant owed a legal duty to the plaintiff,' (2) 'the defendant breached or violated the legal duty,' (3) 'the plaintiff suffered damages,' and (4) 'the breach was a proximate cause of the damages suffered.'" *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 374 (6th Cir. 2009) (quoting *Schultz v. Consumers Power Co.*, 443 Mich. 445, 506 N.W.2d 175, 177 (Mich. 1993)). "The duty that a possessor of land owes to another person who is on the land depends on the latter person's status." *Hampton v. Waste Mgt. of Mich., Inc.*, 236 Mich. App. 598, 601 N.W.2d 172, 175 (Mich. Ct. App. 1999) (citing *Stanley v. Town Square Coop.*, 203 Mich. App. 143, 512 N.W.2d 51, 53 (Mich. Ct. App. 1993)).

"For purposes of premises liability, Michigan courts recognize three common-law categories: trespasser, licensee, and invitee." *Kessler v. Visteon Corp.*, 448 F.3d 326, 336–37 (6th Cir. 2006) (citing *James*, 626 N.W.2d at 162).

The parties do not dispute that Plaintiff was an invitee. An invitee is "one who enters a premises to conduct business that concerns the premises owner at the owner's express or implied invitation." *Riddle v. McLouth Steel Prod. Co.*, 440 Mich. 85, 485 N.W.2d 676, 679 n.4 (Mich. 1992).

"Generally, a premises possessor owes a duty of care to an invitee to exercise reasonable care to protect the invitee from an unreasonable risk of harm caused by a dangerous condition on the land." *Mann v. Shusteric Enters., Inc.*, 470 Mich. 320, 683 N.W.2d 573, 577 (Mich. 2004) (citing *Bertrand v. Alan Ford, Inc.*, 449 Mich. 606, 537 N.W.2d 185, 186 (Mich. 1995)). "Michigan law provides liability for a breach of this duty of ordinary care when the premises possessor knows or should know of a dangerous condition on the premises of which the invitee is unaware and fails to fix the defect, guard against the defect, or warn the invitee of the defect." *Hoffner v. Lanctoe*, 492 Mich. 450, 821 N.W.2d 88, 94 (Mich. 2012) (citing *Bertrand*, 537 N.W.2d at 186; *Samuelson v. Cleveland Iron Mining Co.*, 49 Mich. 164, 13 N.W. 499, 501 (Mich. 1882)). "However, this duty does not generally encompass removal of open and obvious dangers," unless "special aspects of a condition make even an open and obvious risk unreasonably dangerous." *Lugo v. Ameritech Corp.*, 464 Mich. 512, 629 N.W.2d 384, 386 (Mich. 2001).

### a. Open and Obvious Doctrine

#### i. Dimensions and Location of the Water Display

Defendant argues the water display was open and obvious as a matter of law because "[i]t was impossible for an average person to miss" and "Plaintiff's only evidence to the contrary is that she did not see the display before she fell." Dkt. No. 17, p. 10 (Pg. ID 112). Plaintiff responds there is a genuine dispute of material fact about whether the water display was open and obvious because "it was positioned where a customer turning onto the aisle would not have seen it." Dkt. No. 19, p. 10 (Pg. ID 212). The Court agrees with the Plaintiff, given the location and dimensions of the water display.

"[W]here the dangers are known to the invitee or are so obvious that the invitee might reasonably be expected to discover them, an invitor owes no duty to protect or warn the invitee unless he should anticipate the harm despite knowledge of it on behalf of the invitee." *Riddle*, 485 N.W.2d at 681 (citing *Williams v. Cunningham Drug Stores, Inc.*, 429 Mich. 495, 418 N.W.2d 381, 383 (Mich. 1988)). Whether a danger is open and obvious depends on if it is reasonable to expect an average person with ordinary intelligence to discover the danger upon casual inspection. *Hoffner*, 821 N.W.2d at 94–95. This is an objective test, and thus, courts "look[] not to whether a particular plaintiff should have known that the condition was hazardous, but to whether a reasonable person in his or her position

would have foreseen the danger." *Kennedy v. Great Atl. & Pac. Tea Co.*, 274 Mich. App. 710, 737 N.W.2d 179, 182 (Mich. Ct. App. 2007) (per curiam) (citing *Joyce v. Rubin*, 249 Mich. App. 231, 642 N.W.2d 360, 364–65 (Mich. Ct. App. 2002)).

The Defendant contends case law proves the water display mirrors hazards courts have deemed open and obvious. This argument is unavailing. First, the cases Defendant primarily relies on in support—*LaFontaine v. Big Lot Stores, Inc.*, No. 300306, 2011 WL 6757480 (Mich. Ct. App. Dec. 22, 2011) (per curiam) and *Freeman v. K-Mart*, No. 331224, 2017 WL 2463407 (Mich. Ct. App. June 6, 2017) (per curiam)—are unpublished and thus not binding on the Court. *See Sheets v. Moore*, 97 F.3d 164, 167 (6th Cir. 1996).

Second, these cases are distinguishable. In *LaFontaine*, the "[plaintiff] tripped over a three-foot-square wheeled wooden pallet," situated immediately around a store aisle corner. 2011 WL 6757480, at *1. The court concluded the pallet was open and obvious because "it is impossible for the pallet not to have been visible to a person approaching the end of the aisle before reaching the pallet itself. The pallet stuck out three feet—halfway across the intersecting aisle." *Id.* at *2. Indeed, the pallet was sufficiently large that after tripping on it, the plaintiff jumped onto it with both feet, where it then rolled from under her, causing her to fall to the floor. *Id.* at *1. Conversely, the water display was much shorter than

three feet and protruded far less than halfway across the Speedway aisle. Dkt. No. 17-3, p. 2 (Pg. ID 153). The water display was also not large enough for the incident to unfold as it did in *LaFontaine*. Given these factual differences, *LaFontaine* is not controlling.

Likewise, *Freeman* is inapposite. There, the plaintiff fell over an empty endcap, which "was rather large, standing nine inches high, 36 inches wide, and 26 inches deep." 2017 WL 2463407, at *3. The endcap base was "part of the counter," with the "counter" being "the shelving unit that holds merchandise on either side of an aisle." *Id.* at *1 n.3. The court held the endcap base was an open and obvious hazard as (1) "[t]he witnesses, including plaintiff, unanimously testified that nothing obstructed the view of the end cap at the counter's end to which it was attached"; and (2) "[i]t is clear from the photograph, and the undisputed fact that the end cap extended out 26 inches from the end of the counter, that the end cap base would have been visible to an average customer as she approached the end of the aisle, if she were to casually inspect the area." *Id.* at *3.

On the other hand, here, reasonable minds may disagree on whether the water display was "rather large." Although the display stood three inches higher than the endcap base in *Freeman*, the display was not as wide or deep. Dkt. No. 17-5, p. 4 (Pg. ID 159). Significantly, it is not evident that the water display

extended into the intersecting aisle, let alone twenty-six inches. *See* Dkt. No. 17-3, p. 2 (Pg. ID 153).

Moreover, the location of the water display also differs from that of the endcap discussed in *Freeman*, indicating a question of fact exists about whether the water display was obstructed. *Id.* Specifically, the endcap in *Freeman* was at the end of an aisle, comprising part of the counter, whereas the water display was in the store aisle, adjacent to the counter. *Id.* This difference makes this case factually distinct from *Freeman* and supports Plaintiff's assertion that there is a question of material fact regarding whether the water display was open and obvious.

Additionally, the Defendant contends the Plaintiff did not see the water display because she was not looking where she was going or holding a newspaper with both hands and occasionally reading it, or both. Dkt. No. 17, p. 11 (Pg. ID 113). In support of its assertion that the water display was open and obvious, the Defendant highlights Plaintiff's testimony that, after her fall, the water display was "pretty obvious" to see. Dkt. No. 17-2, p. 7 (Pg. ID 144).

These arguments are unavailing—the Plaintiff's level of care and subjective outlook after the incident are not controlling. Instead, the essential inquiry is whether, upon causal inspection, a reasonable person in Plaintiff's position would have noticed the water display. *See Kennedy*, 737 N.W.2d at 182. Given the

11

dimensions and location of the display, there is a genuine dispute of material fact regarding whether a reasonable person would have discovered the display upon casual inspection.

### ii. Contrast of Water Display with the Floor

The Defendant argues the water display was an open and obvious condition because its "dark blue color contrasted sharply with the white floor underneath." Dkt. No. 17, p. 10 (Pg. ID 112). The Court agrees that the water display contrasted with the floor.[2] However, this contrast alone does not preclude the Court's finding that there is a genuine dispute of material fact about whether the water display was an open and obvious condition. The open and obvious doctrine requires an objective inquiry, which considers the circumstances of a person in Plaintiff's position. Because of the location and dimensions of the water display, there is a genuine dispute in this case. Indeed, the color contrast is rendered less persuasive here, as the location and dimensions of the water display raise a question of fact about whether the display would have been open and obvious to a reasonable person in the first instance.

In sum, viewing the evidence in the light most favorable to the Plaintiff, as

---

[2] The record, including Plaintiff's own testimony, establishes the absence of a genuine dispute about whether the water display blended in with the floor. Plaintiff testified that she thought the water display was black and the floor was a white tile. Dkt. No. 17-2, p. 7, 10 (Pg. ID 144, 147). The photograph that Plaintiff testified was an accurate depiction of the aisleway shows a blue water display visible against white floor tiles. Dkt. No. 19-2, p. 2 (Pg. ID 227).

the Court must, there is a genuine dispute of material fact regarding whether the water display was an open and obvious condition. Because there is a genuine dispute of material fact about whether the display was open and obvious, the Court need not address whether the display possessed special aspects. Accordingly, the Court DENIES Defendant's Motion for Summary Judgment on the premises liability count.

### B. General Negligence Claim

Plaintiff's second claim is for ordinary negligence. The Defendant contends this claim sounds in premises liability rather than ordinary negligence because its placement of the water display is not the type of overt act necessary to sustain a negligence claim. The Court agrees.

"Courts are not bound by the labels that parties attach to their claims." *Buhalis v. Trinity Continuing Care Servs.*, 296 Mich. App. 685, 822 N.W.2d 254, 258 (Mich. Ct. App. 2012) (citing *Manning v. Amerman*, 229 Mich. App. 608, 582 N.W.2d 539, 541 (Mich. Ct. App. 1998)). "It is well settled that the gravamen of an action is determined by reading the complaint as a whole, and by looking beyond mere procedural labels to determine the exact nature of the claim." *Adams v. Adams (On Reconsideration)*, 276 Mich. App. 704, 742 N.W.2d 399, 403 (Mich. Ct. App. 2007). "Michigan law distinguishes between claims arising from ordinary negligence and claims premised on a condition of the land." *Buhalis*, 822

N.W.2d at 258 (citing *James v. Alberts*, 464 Mich. 12, 626 N.W.2d 158, 161–62 (Mich. 2001)). Plaintiffs can pursue claims in ordinary negligence for the overt acts of a landowner on his or her premises, and a claim in premises liability for the condition of a premises. *Katchudas v. Invaders Self Auto Wash, Inc.*, 486 Mich. 913, 781 N.W.2d 806, 806 (Mich. 2010) (mem.). Plaintiffs may pursue claims for both ordinary negligence and premises liability in the same action. *Laier v. Kitchen*, 266 Mich. App. 482, 702 N.W.2d 199, 208–09 (Mich. Ct. App. 2005). The distinction between premises liability and ordinary negligence claims is important, as "the open and obvious danger doctrine does not apply to ordinary negligence claims." *Wheeler v. Cent. Mich. Inns, Inc.*, 292 Mich. App. 300, 807 N.W.2d 909, 911 (Mich. Ct. App. 2011).

Plaintiff asserts there is a genuine factual dispute regarding her ordinary negligence claim because the Defendant "negligently placed" the water display in the aisle. Dkt. No. 19, p. 10 (Pg. ID 212). She cites *Laier* in support of this argument. 702 N.W.2d 199. However, *Laier* is not instructive. There, an invitee entered the defendant's land to help repair a tractor and suffered fatal injuries during the defendant's operation of the tractor. *Id.* at 204. The plaintiff's claim that the defendant owed the victim a duty of care in the operation and handling of the tractor demonstrated that the "[d]efendant's conduct was thus an alleged basis of liability, independent of premises liability." *Id.* at 209. (citing *James*, 626

14

N.W.2d at 162). As for the plaintiff's premises liability claim, the court concluded that the defendant owed the victim, as an invitee, "a duty to protect [the victim] from unreasonable risks of injury known to defendant and to warn [the victim] about those risks." *Id.* at 211.

Unlike in *Laier*, Plaintiff does not assert that the Defendant took an affirmative action that caused her harm. Rather, Plaintiff complains of how the Defendant organized the water display on its premises, asserting that the Defendant "negligently placed the [water display] in the position just past the corner of the aisle." Dkt. No. 19, p. 10 (Pg. ID 212). Michigan law establishes that "[i]f the plaintiff's injury arose from an allegedly dangerous condition on the land, the action sounds in premises liability rather than ordinary negligence; this is true even when the plaintiff alleges that the premises possessor created the condition giving rise to the plaintiff's injury." *Buhalis*, 822 N.W.2d at 258. Thus, even though Plaintiff asserts that the Defendant placed the water display and in that way created the condition leading to Plaintiff's injury, this allegation does not transform the claim into one for ordinary negligence. *See, e.g., Hall v. IKEA Prop. Inc.*, 171 F. Supp. 3d 634, 640 (E.D. Mich. 2016) (holding plaintiff's claim that the defendant owed plaintiff "a duty to maintain [] premises and loading dock in a safe condition, free from danger" sounded in premises liability, and not negligence); *Crumby v. MGM Grand Detroit, LLC*, No. 315734, 2014 WL 3747617, at *2 (Mich. Ct. App.

July 29, 2014) (holding a claim sounded in premises liability, not negligence, as the "[p]laintiff's injury occurred because of a condition on the land—the stationary cart and its placement in the aisle—rather than any conduct by [an] employee.").

In asserting that the second claim sounds in ordinary negligence, Plaintiff cites *Perkins v. Mid-Michigan Recycling, LLC*, No. 312936, 2014 WL 2795843 (Mich. Ct. App. June 19, 2014) (per curiam). The Defendant responds that *Foust v. Home Depot USA, Inc.*, 166 F. Supp. 3d 881 (E.D. Mich. 2016) is instructive. The Court agrees with the Defendant.

In *Perkins*, the plaintiff claimed he fell from a pay loader[3] because the step closest to the ground, the "swing step," was missing. 2014 WL 2795843, at *1. The court found the plaintiff's claim was for ordinary negligence and not premises liability because the plaintiff asserted that "by failing to repair the swing step despite plaintiff's repeated requests that it do so, defendant allegedly breached its duty to maintain the *industrial vehicular equipment* with which plaintiff was required to work in safe, operable condition." *Id.* at *2. (emphasis in original).

Conversely, in *Foust*, while walking in the defendant's store, the plaintiff's shoelace caught hold of a conversion cart situated just inside an aisle, causing the plaintiff to fall and suffer injury. 166 F. Supp. 3d at 883. The plaintiff asserted a

---

[3] A pay loader is a heavy equipment machine with wheels used to transport or transfer materials onto other heavy equipment. *See Perkins*, 2014 WL 2795843, at *1 n.1.

16

claim of ordinary negligence "based on the decision of [d]efendant's employees to place the conversion cart in the aisle in the manner that it was situated." *Id.* at 890 & n.3. The court granted the defendant summary judgment on this ordinary negligence claim, holding that the plaintiff "claim[ed] injuries arising from a condition of the premises." *Id.* at 890.

Here, Plaintiff asserts the Defendant failed to maintain reasonably safe aisleways because of the way the Defendant situated the water display. Products in an aisleway as in *Foust* are a condition of the land, unlike the equipment in *Perkins*. Thus, Plaintiff's allegations sound in premises liability.

Finally, Plaintiff mistakenly relies on the *Perkins* court's discussion of whether the pay loader was a fixture[4] to argue that the water display is not a fixture, and therefore, not a condition of the land. 2014 WL 2795843, at *2. Plaintiff misconstrues the court's discussion. The court notes that the fixtures analysis "is proper for 'items of personal property that have a possible existence apart from the realty.'" *Id.* (quoting *Fane*, 631 N.W.2d at 684). The water display, however, cannot be said to have any possible existence apart from the realty. Indeed, testimony from several of Defendant's employees only confirms the water display was merchandise. Dkt. No. 17-6, p. 5 (Pg. 165); Dkt. No. 19-6, p. 2 (Pg.

---

[4] The *Perkins* court noted that "'[a]n item is a fixture if (1) it is annexed to realty, (2) its adaptation or application to the realty is appropriate, and (3) it was intended as a permanent accession to the realty.'" *Id.* at *2 (quoting *Fane v. Detroit Library Comm.*, 465 Mich. 68, 631 N.W.2d 678, 683–84 (Mich. 2001)).

ID 244).

As Plaintiff alleges injury stemming from Defendant's placement of the water display, Plaintiff's negligence claim sounds in premises liability. Accordingly, the Court GRANTS Defendant's Motion for Summary Judgment on Plaintiff's ordinary negligence claim.

## V. CONCLUSION

For the aforementioned reasons, the Court DENIES Defendant's Motion for Summary Judgment on Plaintiff's premises liability claim, and GRANTS Defendant's Motion for Summary Judgment as to Plaintiff's ordinary negligence claim [17].

IT IS SO ORDERED.

Dated: September 15, 2017 /s/Gershwin A. Drain
GERSHWIN A. DRAIN
United States District Judge

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
September 15, 2017, by electronic and/or ordinary mail.
/s/ Tanya Bankston
Deputy Clerk